SMITH et al. v. BELDING et al.   (No. 591.)

(Court of Civil Appeals of Texas. Beaumont. July 5, 1920. Rehearing Denied Oct. 13, 1920.)

1. **Appeal and error** ⬳742(5) — **Statement after assignment should show objections were seasonably made to charge.**

Assignments of error to the charge may be ignored, the statement following them, and having reference to them under the rules, failing to show that the objections were timely and properly made, and the court's attention called thereto before the charge was given, though in the brief counsel say this was done.

2. **Appeal and error** ⬳499(4)—**Record must show seasonable objection to charge.**

Assignment of error based on objections to the charge cannot be considered; the record failing to disclose that the objections were timely and properly presented to the trial court, and its action thereon. Vernon's Sayles' Ann. Civ. St. 1914, arts. 1971, 1973.

3. **Executors and administrators** ⬳531—**Payment held no consideration for release of administrator's sureties.**

Payment by administrator de bonis non for purpose of turning over to intestate's heirs the money that had come into his hands as such, which at death of the administrator was on deposit to credit of the administrator as such, is no consideration for any attempted release of the administrator de bonis and another as sureties on the administrator's bond.

4. **Executors and administrators** ⬳528(6)—**Bondsmen liable though check made to administrator as agent and attorney in fact for heirs.**

Though check for price of articles belonging to intestate's estate and sold by administrator by authority of the probate court was made payable to administrator as agent and attorney in fact of the heirs, he received it as administrator, and the sureties on his bond are liable for the proceeds.

5. **Executors and administrators** ⬳537(8)—**Sureties on bond not entitled to credits for administrator's commission in absence of pleading and proof.**

Sureties on administrator's bond sued thereon are not entitled to any credit, as for com-

missions of administrator, they neither pleading nor showing any such commissions were due and owing him.

**6. Executors and administrators ⬤⇒532—Sureties prima facie entitled to credits as shown by canceled checks and vouchers.**

An administrator, and consequently his sureties sued on his bond, *held* prima facie entitled to credits for payments by him in the administration of the estate, as shown by his canceled checks and other vouchers.

**7. Executors and administrators ⬤⇒537(11)—Time from which interest should be allowed against sureties stated.**

Interest should not be allowed against the sureties on administrator's bond from the time of his death, but only from the time of demand on them for payment of money belonging to the estate, prior to which time they had no knowledge of any claimed misapplication of funds, or failure to account by the administrator; no demand for payment by him or request for distribution of the estate, or suggestion of willful or wrongful withholding of money, having been made.

Error from District Court, Harris County; Lewis R. Bryan, Special Judge.

Action by Abbie Belding and others against W. A. Smith and another, sureties on an administrator's bond. Judgment for plaintiffs, and defendants bring error. Modified and affirmed.

Elliot Cage, of Houston, for plaintiffs in error.

A. B. Wilson, of Houston, for defendants in error.

HIGHTOWER, C. J.   Dwight Belding died intestate in Harris county, Tex., in July, 1911. He left surviving him, as his only heirs, Mrs. Abbie Belding, who was his mother, H. W. Belding, a brother, and two sisters, Mrs. J. D. Rogers and Mrs. Mary B. Finch, all of whom lived in other states. At the time of his death Dwight Belding was possessed of some property, consisting partly of real property and partly of personal property and certain choses in action, most of which was in Harris county, Tex., and Belding was a resident of that county at the time of his death. In September, 1911, James R. Masterson, a resident citizen of Harris county, Tex., was appointed by the probate court of that county as administrator of the estate of Dwight Belding, deceased, and promptly qualified as such, and executed a bond as such administrator in the sum of $30,000, and H. Masterson and W. A. Smith were the sureties on such bond. James R. Masterson, as administrator, promptly took charge of Dwight Belding's estate, and administered upon the same under the orders of the probate court of Harris county until his death on the 4th day of March, 1914, on which date the said James R. Masterson met his death very suddenly in the city of Houston, in an automobile collision. At the time of his death James R. Masterson had not made his final report as such administrator, and had not been discharged as such administrator. Shortly after James R. Masterson's death, H. Masterson, who, as we have shown, was one of said administrator's boudsmen, was by the probate court of Harris county appointed administrator de bonis non of the estate of Dwight Belding and duly qualified as such, but no property of any kind or character ever came into the hands of said H. Masterson as administrator de bonis non, except $1,034.52 in money, which, at the date of the death of James R. Masterson, was on deposit in one of the banks in Houston in the name of James R. Masterson as administrator of said Belding estate.

This suit was filed in the district court of Harris county by the above-named heirs of Dwight Belding against the said W. A. Smith and H. Masterson, and in their petition said plaintiffs alleged, substantially, that James R. Masterson, while administrator of said Belding estate, received and collected money and property, real and personal, aggregating $16,917.13, and that said administrator paid out on claims against said estate $3,689.68, and that he paid to the said heirs of Dwight Belding $5,000. They further alleged that there was property consisting of real estate belonging to said estate of the value of $786, and that said administrator, James R. Masterson, was entitled to credits in the sum of $1,034.50, which after his death was paid to plaintiffs by defendant H. Masterson, in his capacity as administrator de bonis non, leaving a balance due plaintiffs in the sum of $6,406.93, and plaintiffs claimed that they were entitled to interest thereon at the rate of 6 per cent. per annum from March 4, 1914, the date of James R. Masterson's death. The petition then set forth the property belonging to said Belding estate, which had come into the hands of said James R. Masterson as administrator thereof, and also purported to set forth the claims that had existed against said estate, and which plaintiffs claimed had been discharged by the said James R. Masterson as administrator of said estate, and then followed a statement of the amount of credits which plaintiffs alleged James R. Masterson, as administrator, and H. Masterson and Smith, as his bondsmen, were entitled to, such statement showing in the aggregate $6,820.52. It was further alleged that James R. Masterson, at the time of his death, was not in possession of any property or estate of any character out of which the plaintiffs could recover the amount that was due them by him as such administrator.

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The defendants, W. A. Smith and H. Masterson, answered by general demurrer and general denial, and further specially alleged, substantially, that James R. Masterson, during the time he was administrator of said estate, collected and paid out numerous sums of money for said estate; that he met his death very suddenly in an automobile accident, and had no opportunity to file his final account, nor to make a formal showing of disbursements of money which he had paid out in the administration of said estate; that, by reason of the fact that he was so prevented from filing a final account, it was difficult to check up the many items and numerous sums of money received and paid out by the said James R. Masterson while such administrator, but that all sums due and owing plaintiffs as heirs of Dwight Belding were paid out by the said James R. Masterson as such administrator. Defendants further alleged, substantially, that all matters in controversy in this suit were adjusted and settled between the plaintiffs and the defendant H. Masterson, and that in such settlement plaintiffs received from H. Masterson the sum of $952.75, which was in full settlement and satisfaction of any and all claims by plaintiffs against said estate, as well as against said defendants, and that plaintiffs, by such agreement and settlement, released and discharged defendants in this suit from any and all liability to plaintiffs or to said estate, and that plaintiffs accepted said sum of $952.75 in payment of all sums due and owing to them out of the estate of Dwight Belding, deceased.

To this answer plaintiffs replied by supplemental petition, alleging, substantially, that if they received from H. Masterson any sum in full settlement and satisfaction of their claims against defendants, said sum was paid to plaintiffs' attorney by H. Masterson, as administrator de bonis non of the estate of Dwight Belding, deceased, and that it was not intended that said release should cover anything except the amount of money in said H. Masterson's hands as administrator de bonis non, and that their attorney had no power or authority to execute a release discharging defendants from liability as bondsmen upon the bond of the administrator, James R. Masterson; that such claimed settlement and adjustment had reference only to the money which was paid plaintiffs' attorney by said administrator de bonis non, and that it was understood by plaintiffs' attorney and said H. Masterson at the time that such agreement had reference only to the amount of money in the said H. Masterson's hands as administrator de bonis non, and that it was not intended by any of the parties to such agreement and settlement to release the said H. Masterson or the said W. A. Smith from any liability as bondsmen on the official bond

of the said James R. Masterson; that if the wording of said instrument reflected other than as a receipt for the amount from defendant, as administrator de bonis non, then such was because of a mutual mistake; and further that there was no consideration for the execution of the release of defendants as sureties on said administrator's bond, if such release was in fact susceptible of any such construction.

The trial was had with a jury, and the cause submitted upon certain special issues, and upon the verdict judgment was rendered in favor of the plaintiffs against defendants for the aggregate amount of $6,876.10, with interest on that amount from the date of judgment at the rate of 6 per cent. per annum. From this judgment a writ of error was prosecuted by the defendants Smith and Masterson, who for brevity will be referred to as "appellants," and defendants in error as "appellees."

[1, 2] By their first, second, and third assignments of error appellants complain of certain portions of the trial court's charge, and counsel, in their brief, state that the charges complained of by these assignments were timely and properly objected to before the charge was given, but in the statement following these assignments, and having reference thereto under the rules, fails to show that the objections now complained of were ever called to the attention of the trial court, and for that reason we would be justified in ignoring these assignments because not followed by a statement in the brief showing by the record that such objections were timely and properly made, and the court's attention called thereto before the charge was given to the jury. However, upon examining the record, notwithstanding the failure to make this showing in the statement under these assignments, we find that the same fails to disclose that the objections to the charge now complained of were ever called to the attention of the trial judge or in any manner acted upon by him. It is the well-settled practice now in this state that an assignment of error based on objections to the trial court's charge cannot be considered where the record fails to disclose that the objections were presented to the trial court at the proper time and in the proper manner, and the trial court's action thereon. Vernon's Statutes, arts. 1971 and 1973; Railway v. Dickey, 108 Tex. 126, 187 S. W. 184; Railway v. Bartek, 213 S. W. 602; Railway v. Churchill, 213 S. W. 253; Lowery v. McCrary, etc., Co., 213 S. W. 736. The first three assignments of error are therefore overruled.

[3] Upon the trial of the cause below the trial judge refused to submit for the determination of the jury the special plea contained in the answer of appellants to the effect that appellees, by their attorney,

agreed with appellant H. Masterson to relieve and release him and the said Smith as bondsmen of the administrator, James R. Masterson, in consideration of the payment of $952.75 to their said attorney for them by the said H. Masterson, and this action on the part of the trial court is made the basis of the fifth assignment of error. Under this assignment it is contended by appellants that they were entitled to an affirmative presentation of such issue,

Without going into this matter in detail, we have concluded that the instrument found in the record which appellants claim was a release in full of their liability as bondsmen upon the bond of James R. Masterson as administrator, and which instrument was executed by the attorney for appellees, is not susceptible of such construction, but that, on the contrary, it is reasonably clear that such instrument was intended as a receipt by appellees' attorney to H. Masterson, as administrator de bonis non, for the sum of $1,034.52, and a release in full to him, as such administrator de bonis non, of any and all liability, as such, to the appellees in this case. For this reason alone the trial court was not in error in declining to submit such issue to the jury. The action of the trial court in this respect was also correct for the further reason that it was shown by the undisputed evidence that A. B. Wilson, who was the attorney for the appellees, and who acted for them in receiving this $1,034.52 from H. Masterson, had no authority from appellees or any of them to release Masterson and Smith, or either of them, from any liability as bondsmen on the official bond of James R. Masterson. The action of the trial court in this respect was further correct, for the reason that the undisputed evidence shows that there was no consideration whatever for any such release as claimed by appellants. The payment of the $952.75 by H. Masterson to the attorney of appellees was for the purpose of turning over to appellees, through their said attorney, the amount of money that had come into H. Masterson's hands as administrator de bonis non, and which, upon the death of James R. Masterson as administrator, was then on deposit to the credit of such administrator, after certain other costs had been deducted from this $1,034.52. The assignment of error is overruled.

[4] The sixth, seventh, and eighth assignments of error are submitted together. They are as follows:

"(6) Because the verdict of the jury is contrary to the evidence in that it includes in the assets of said estate $6,596.19, the proceeds of three Dermody notes, which amount was not received by James R. Masterson as administrator of said estate, but was received and paid to him as agent and attorney in fact for the Belding heirs.

"(7) Because the judgment of the court is contrary to the law and the uncontroverted evidence, in that it includes in the assets of said estate, and makes defendants responsible therefor, for $6,596.19, which was not paid to nor received by James R. Masterson as administrator of said estate, but was paid to and received by him as agent and attorney in fact for plaintiffs.

"(8) Because the verdict of the jury and the judgment of the court are contrary to the law and evidence, because the uncontroverted testimony shows that there has been paid by James R. Masterson, administrator, in claims against said estate, and to the heirs, the plaintiffs in this cause, more money than was received by said James R. Masterson in his capacity as administrator of said estate."

Under these assignments is submitted this proposition:

"Sureties on an administrator's bond are only liable for assets that he received in his official capacity as administrator."

The counter proposition of appellees is:

"The proceeds from the sale of vendor's lien notes by the administrator, under order of the probate court, said notes being the property of the estate upon which the administrator is administering, belongs to the estate irrespective of the manner and form in which the administrator receives payment for said notes."

James R. Masterson, as administrator of the estate of Dwight Belding, deceased, inventoried four vendor's lien notes for the sum of $2,377 each as the property of said estate. The record shows that he afterwards, as such administrator, filed an application in the probate court of Harris county for the sale of three of these notes, in which application he asked for an order of the court authorizing the sale of said notes at a discount of 7½ per cent. and the application was granted as made. In the sale of such notes by said administrator, James R. Masterson, acting under the order of the probate court, H. Masterson purchased said three notes, together with other notes belonging to appellees, and H. Masterson paid to James R. Masterson the sum of $19,788.54 therefor by check, the check being made payable to James R. Masterson, "agent and attorney in fact for the Belding heirs." In view of the fact that these notes belonged to the estate of Dwight Belding, deceased, and were being handled by James R. Masterson as the administrator of that estate, and that said administrator sold these notes by authority of the probate court, having control of said estate, and in his capacity as such administrator, he could not be permitted, and his bondsmen as such administrator of said estate cannot be permitted, to deny that he sold said notes as administrator of said estate and received the money therefor from H. Masterson in his capacity as administrator of said estate, notwith-

standing the fact that the check given by H. Masterson in payment therefor recited that he received it as "agent and attorney in fact for the Belding heirs." The legal effect of the transaction was that James R. Masterson received said check as administrator of the estate of Dwight Belding, deceased. We agree, therefore, with the counter proposition of appellees above quoted, and overrule these assignments.

[5] The ninth, tenth, and eleventh assignments raise practically the same point, which is that the trial court committed error in not allowing appellants credit for 5 per cent. commissions upon all sums of money collected by James R. Masterson as administrator of said estate, and also such commissions upon all sums paid out upon approved and allowed claims against said estate, which amounts appellants contend should have been deducted from the amount of the judgment as entered.

We have stated above the substance of the pleadings of both parties to this suit, and it will appear therefrom that there was no pleading on the part of appellants in this case claiming that they were entitled to set off against the claim of appellees any amount due James R. Masterson as commissions, as here now claimed by them, nor is there any evidence in the record showing or tending to show that any commissions were due James R. Masterson as administrator at the time of his death, as appellants now would claim. Therefore, there being neither pleading nor proof by appellants claiming and showing that such commissions were due and owing James R. Masterson, the court was not in error in not allowing as a credit on the amount found to be due appellees the commissions here now contended for, and these assignments are overruled.

[6] By the twelfth assignment of error it is complained that the verdict of the jury and judgment of the court were contrary to the law and the evidence, in that they failed to give appellants credit for the following items paid out by James R. Masterson in the administration of said estate, to wit:

$18.60 paid to the clerk of the Court of Civil Appeals, Galveston, by check dated August 17, 1912.

$346 paid to George H. Hermann by check dated March 4, 1912.

$5.75 paid to the clerk of the Court of Civil Appeals of Galveston by check dated August 23, 1912.

$5.05 paid to the clerk of the Court of Civil Appeals as costs in the case of Steele v. Belding September 2, 1912.

$100 paid to Presley K. Ewing as fee in representing the Beldings from the Court of Civil Appeals in the case of Steele v. Belding by check dated March 22, 1912.

$6.35 paid to the clerk of the Court of Civil Appeals July 17, 1912.

$31 paid to Gray, Dillaye & Co. for briefs

in the case of Steele v. Belding heirs by check dated November 9, 1911.

$403.99 additional amount paid to H. Masterson on claims against Belding estate, amount as shown by inventory paid by check dated March 15, 1912.

In this connection appellants introduced in evidence on the trial the following vouchers:

Check dated March 4, 1912, payable to bearer, indorsed by George H. Herman in the sum of $346, signed by James R. Masterson, administrator of Dwight Belding.

Receipt of H. H. Garrett, clerk of Court of Civil Appeals, for costs in case of heirs of Wm. Steele v. Belding in the sum of $6.35 and voucher showing payment of said amount.

Receipt from Gray, Dillaye & Young for $31 for printing briefs in case of Steele v. Belding and voucher showing payment of said amount.

Check in favor of Presley K. Ewing, signed by James R. Masterson, administrator of estate of Dwight Belding, shown to have been in payment for services rendered in the case of Steele v. Belding, for $100.

Check in favor of clerk of Court of Civil Appeals for the sum of $18.50, signed by James R. Masterson, administrator of Dwight Belding estate.

Check in favor of Court of Civil Appeals, signed by James R. Masterson, administrator of the estate of Dwight Belding, for $5.75.

Receipted cost bill in case of Steele v. Belding with draft attached, drawn by clerk of Court of Civil Appeals, paid by James R. Masterson, administrator of the estate of Dwight Belding, for $5.05.

Receipt of Presley K. Ewing for which check for $100 was given, which reads as follows:

"No. 5961. Unknown Heirs of Wm. H. Steele v. H. Waldo Belding et al. Court of Civil Appeals. For going to Galveston and arguing above case in behalf defendants in error, received from James R. Masterson, as administrator estate Dwight Belding, dec'd, the sum of one hundred dollars. Houston, 22d March, 1912. Thanks. Presley K. Ewing."

Check favor of H. Masterson, signed by James R. Masterson, administrator Dwight Belding estate, for $1,575.12.

On the trial below H. Masterson, one of the appellants, testified as follows:

"This check was paid in settlement of the claims against the estate. They owed me that much money."

"That indebtedness to me was evidenced by writing, and that evidence was surrendered to the administrator when this was paid. James R. Masterson died in turmoil and confusion, and we have not been able to get all his papers all together. This check is for $1,-575.12, and is signed by James R. Masterson as administrator of the estate of Dwight Belding."

The claim of H. Masterson, as shown by the inventory filed by James R. Masterson, as administrator, and which was introduced in evidence by appellees, amounted to only $1,171.13. This positive testimony of H. Masterson shows clearly that he was paid by James R. Masterson, as administrator of said estate, $1,575.12. This would make a difference of $403.99 to which James R. Masterson would be entitled as a credit, and this credit, of course, would be available to his bondsmen, the appellants in this case. The jury found that James R. Masterson, as administrator, paid out on claims $3,843.77. None of the items above mentioned and which appellants claim they should have been credited with were included in this amount found by the jury. These canceled checks and vouchers, etc., were introduced by appellants without objection on the part of appellees, for the purpose of showing that James R. Masterson, as administrator, was entitled to credits other than those specified in appellees' petition, and we think that such checks and vouchers constituted prima facie proof that James R. Masterson, as administrator, was entitled to such credits, and that they should have been allowed in favor of appellants, as claimed under this assignment, and, without going into detail, we hold that appellants are entitled to have deducted from the judgment against them, as credits in favor of James R. Masterson as administrator, the sum of $666.74.

Now, the jury found that James R. Masterson, as administrator of the Belding estate, received the sum of $15,023.32, and they further found that said James R. Masterson, as administrator, paid out on claims against said estate $3,843.77. We sustain the twelfth assignment of error, and hold that James R. Masterson, as administrator, was entitled to additional credits aggregating the sum of $666.74, which, added to the amount found by the jury as claims paid by him, aggregates $4,510.51. Now, it was admitted that James R. Masterson, as administrator, paid to the appellees in this case, as the heirs of Dwight Belding, the sum of $5,000, and also it was admitted that the administrator de bonis non, H. Masterson, paid to appellees, as such heirs, the sum of $1,034.52. These four amounts, added together, aggregate $10,555.-03, which should be deducted from $15,023.-32 received by the administrator, James R. Masterson, and which would leave the principal balance of $4,478.29, which principal amount the appellees in this case were entitled to recover against appellants.

[7] Now we return to the fourth assignment of error which challenges the action of the trial court in allowing appellees a recovery of interest at the rate of 6 per cent. per annum from the 4th day of March, 1914, the date of the death of the administrator, James R. Masterson, to June 1, 1916; it being the contention of appellants in this connection that such action on the part of the trial court was error, because the uncontroverted evidence showed that no demand whatever had been made upon the administrator, James R. Masterson, or his bondsmen, prior to June 1, 1916, for the payment of any money belonging to the estate, and that no application in any form had been filed for the distribution of said estate.

We sustain this assignment, for the reason that there is no suggestion in the pleadings or in the evidence that the appellees in this case ever made any demand upon James R. Masterson during his lifetime for the payment of any money belonging to them as the heirs of Dwight Belding, deceased, or ever requested in any manner a distribution among them of his estate, nor any suggestion that he willfully and wrongfully withheld from appellees any money belonging to said estate. The record discloses, on the contrary, that James R. Masterson was a practicing attorney at law in the city of Houston, and that in that capacity he represented Dwight Belding in legal matters during the latter's lifetime, and immediately upon his death, by reason of his knowledge of Belding's affairs, and his connection with Belding as attorney, and, knowing the necessity of an administration upon his estate, he applied to the probate court for appointment as administrator. At that very time considerable portions of the real property belonging to Belding's estate was in litigation, and, it seems, was being given legal attention by James R. Masterson, and this litigation did not terminate until more than a year after Belding's death, and during its pendency James R. Masterson, as administrator, was defraying the expense of such litigation, and nothing in this record suggests that he purposely or willfully or wrongfully declined or refused to turn over any portion of the money due the appellees in this case. The evidence further shows without dispute that the bondsman, H. Masterson and W. A. Smith, acquired their first knowledge of any claimed misapplication of the funds of this estate or a failure on the part of James R. Masterson, as administrator, to account to appellees for any portion of the estate prior to June 1, 1916, and, such being the record in this case, we are of the opinion that a recovery of interest should not have been allowed to the appellees from any time prior to June 1, 1916. If we are correct in this, then the appellees should have been permitted to recover in this case the principal amount of $4,478.29, as we have hereinabove shown, with interest thereon at the rate of 6 per cent. per annum from June 1, 1916.

Therefore the judgment of the trial court will be reformed and judgment rendered and entered by this court in favor of appellees against appellants for the principal sum of $4,478.29, with interest at the rate of 6

per cent. per annum thereon from June 1, 1916, to the date of this judgment, and such judgment as entered by this court will itself bear interest at the rate of 6 per cent. per annum until paid. It will be so ordered, and, thus modified, the judgment of the trial court is affirmed. The costs of this appeal will be adjudged against the appellees.